# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZANNE NELLING, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| AMY THEODORE, | : | NO. 11-6973 |
| Defendant | : | |

## MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

**Baylson, J.**                                                                             **January 11, 2013**

## I. INTRODUCTION

The Plaintiff, Suzanne Nelling, initiated this action after she was wrongfully incarcerated in October 2010. In her Third Amended Complaint, Nelling alleges that her former parole officer, Defendant Amy Theodore, is liable (1) under 42 U.S.C. § 1983 for violating her right to liberty under the Due Process Clause, and (2) under state law for the tort of false imprisonment. Currently before the Court is Defendant's Rule 12(b)(6) Motion to Dismiss both claims. For the reasons discussed below, the Court will DENY Defendant's motion and order limited discovery to enable Nelling to pursue her claims.

## II. BACKGROUND

### A. Undisputed Facts

In 2007, Nelling was convicted of Theft by Unlawful Taking in Delaware County's Court of Common Pleas and sentenced to four days to twenty-three months imprisonment with immediate parole. From 2007 to 2009, the Defendant, Amy Theodore (an employee of the Adult Probation and Parole Services of Delaware County), served as Nelling's parole officer. On July

17, 2009, Theodore requested a bench warrant for Nelling after she failed to pay restitution pursuant to the terms of her parole. On August 7, 2009, after Nelling paid the restitution, Theodore requested that the bench warrant be rescinded. The bench warrant was rescinded on September 9, 2009; however, during an encounter with police on October 2, 2010, Nelling was arrested and incarcerated on the basis of this warrant.

**B.      Procedural History**

Initially, Nelling filed suit against many defendants, including "Unknown Employees of the County of Delaware"; "Unknown Employees of Delaware County Board of Prison Inspectors"; and "Unknown Employees of George W. Hill Correctional Facility." In the process of amending her Complaint, however, Nelling has winnowed down the list of Defendants to a single party: Theodore. Nelling alleges Theodore is liable on both constitutional and state tort grounds based on the following averments:

**C.      Plaintiff's Allegations**

On or about October 4, 2010, officials from the Delaware County prison informed Theodore that Nelling had been incarcerated based on the bench warrant Theodore requested in July 2009. 3d Am. Compl. ¶ 7. Despite knowing "there was no lawful reason for plaintiff's incarceration," Theodore "did not secure plaintiff's release from Delaware County Prison until October 21, 2010." Id. ¶¶ 9-10.

Nelling avers that Theodore was "the only state law enforcement official who knew that plaintiff was unlawfully incarcerated." ¶ 11. Based on this, Nelling alleges that Theodore had "a duty to promptly secure plaintiff's release from prison after she was notified of plaintiff's unlawful incarceration." Id. Due to Theodore's "negligence, carelessness, indifference, recklessness, and willful misconduct," she failed to perform this duty. Id. ¶¶ 13.

Nelling's allegations in her Third Amended Complaint are similar to those she made in her Second Amended Complaint, which the Court considered and dismissed without prejudice pursuant to Defendants' Rule 12(b)(6) Motion to Dismiss. Nelling v. Cnty. of Del., No. 11-6973, 2012 WL 3996113 (E.D. Pa. Sept. 11, 2012). The Court dismissed Nelling's constitutional claim because she had not "clearly articulated a legal theory under which Theodore would be liable for violating these rights."[1] Id. at *5. The Court dismissed the state tort claim because Nelling had not "sufficiently pleaded the intent element of a claim for false imprisonment." Id.

In allowing Nelling leave to amend, the Court stated it would "afford Nelling one more, final, opportunity to amend her complaint to clarify her civil rights claim." Id. In affording Nelling this opportunity, the Court explicitly requested that she "make her existing legal theories, causes of action, and factual allegations clear" in a manner consistent with the "requirements set forth in Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)." Id. With respect to Nelling's false imprisonment claim, the Court granted leave to amend "but only if she can responsibly do so." Id. at 12. As the Court stated, it would not be sufficient for Nelling "to simply state in a conclusory fashion that Theodore intended to confine her." Id.

On September 24, 2012, Nelling filed her Third Amended Complaint. (ECF No. 55). A comparison of Nelling's Second and Third Amended Complaints reveals some differences in their factual content. The Third Amended Complaint includes three new factual averments: (1) Theodore "knew the July 2009 Bench Warrant had been rescinded by the Court in September 2009," (2) Theodore "knew there was no lawful reason for plaintiff's incarceration," and (3)

---

[1] As the Court noted, Nelling's Second Amended Complaint "makes only general statements that Nelling was 'deprived of her liberty by [Theodore], in violation of the Due Process Clause of the Fourteenth Amendment,' but does not articulate what category of due process claim Nelling asserts." Id. at *4. The Second Amended Complaint also alleged violations of the First and Fourth Amendments, but Nelling's brief failed to explain the basis for these allegations, leading the Court to conclude that Nelling had "abandoned those causes of action." Id.

3

Theodore was "the only state law enforcement officer who knew that plaintiff was unlawfully incarcerated. 3d Am. Compl. ¶¶ 8-9, 11.

The Third Amended Complaint also omits an allegation from Nelling's previous complaints. Specifically, Nelling no longer references or attaches an October 27, 2010 letter from Theodore to Nelling, in which Theodore explained (six days after Nelling's release) that Nelling's incarceration was the result of an error in the National Computer Information Center ("NCIC"). The NCIC, a "computerized index of criminal justice information . . . . available to Federal, state, and local law enforcement," assists law enforcement in "apprehending fugitives." *National Crime Information Center (NCIC)—FBI Information Systems*, http://www.fas.org/irp/agency/doj/fbi/is/ncic.htm (last visited Jan. 9, 2013). In Nelling's previous complaints, she alleged that error(s) by unknown person(s) resulted in her warrant remaining in NCIC's databank after it was rescinded, thus prompting her arrest in October 2010. Nelling does not, however, make this accusation in her Third Amended Complaint.[2]

In addition to these factual differences, Nelling's new complaint provides a somewhat clearer articulation of the legal theory underpinning her constitutional claim. Specifically, Nelling alleges that Theodore, as the "only state law enforcement officer" who knew of her unlawful incarceration, "had a duty to promptly secure [her] release from prison." 3d Am. Compl. ¶ 11. Theodore violated this duty by acting with "negligence, carelessness, indifference, recklessness and willful misconduct." Id. ¶ 13. Based on this, Nelling claims that Theodore violated her right to "not be deprived of her liberty without due process of law guaranteed by the 5th and 14th Amendments to the Constitution of the United States." Id. ¶ 15.

---

[2] Because Nelling's Third Amended Complaint has eliminated any reference to the NCIC, the Court will not consider this issue in its ruling.

4

On October 9, 2012, Theodore moved to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 56).

## III. THE PARTIES' ARGUMENTS

Theodore moves to dismiss Nelling's complaint based on three grounds: (1) Nelling has "failed to allege a valid constitutional claim," because Theodore did not owe her a "duty" under the Constitution; (2) Theodore is "protected by qualified immunity"; and (3) the false imprisonment claim cannot be sustained because "[t]here is nothing . . . to establish that Amy Theodore ever 'intended' for Nelling to be imprisoned."

Nelling counters by arguing that her constitutional theory is supported by dicta in Berg v. County of Allegheny, 219 F.3d 261 (3d Cir. 2000) where the Third Circuit left open for future consideration the facts under which a state official's "deliberate indifference" to an inmate's unlawful incarceration could amount to a substantive due process violation.

## IV. LEGAL STANDARDS

### A. Jurisdiction

The Court has jurisdiction over Nelling's federal civil rights claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This Court has supplemental jurisdiction over Nelling's state false imprisonment claim pursuant to 28 U.S.C. § 1367(a).

### B. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[3] While all factual allegations must be accepted as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), this requirement does not apply to legal conclusions, Iqbal, 556

---

[3] Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 555 U.S. at 684.

5

U.S. at 678. A court must thus distinguish factual allegations from legal conclusions and assess if the factual allegations make out a "plausible claim for relief" for every legal claim asserted. Id. at 679.

V.     ANALYSIS

42 U.S.C. § 1983 provides a remedy for the violation of an individual's constitutional or federal rights by someone acting under color of state law. Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 175–76 (3d Cir. 2010). To have a viable 1983 claim, the plaintiff must show that the individual defendant had "personal involvement in the alleged wrongdoing." See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). Here, Nelling makes no allegation that Theodore was the one who caused her unlawful arrest and incarceration. The Court drew attention to this in its previous opinion and called on Nelling to explain how it was that *Theodore* violated her rights. Nelling, 2012 WL 3996113, at *3. In response, Nelling's Third Amended Complaint asserts that Theodore had an affirmative "duty" to secure her release once she learned that Nelling's incarceration was based on a bench warrant that she "knew" had been rescinded.

A.     **Did Theodore Owe Nelling an Affirmative Duty Under the Constitution?**

It is now axiomatic that "the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 431 (3d Cir. 2006) (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)). Although there are two established exceptions to this rule, they are both narrow in scope. One exception applies where "the State takes a person into its custody and holds him there against his will." DeShaney, 489 U.S. at 199-200; see also Sanford v. Stiles, 456 F.3d 298, 304 n.4 (3d Cir. 2006). The other exception applies where the state actor "affirmatively" uses its authority "in a manner that injures a citizen or renders him more vulnerable to injury from

another source than he or she would have been in the absence of state intervention." Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006).

### 1. Custodial Relationship

When prison officials act with "deliberate indifference" to an inmate's welfare, they can be held liable for substantive due process violations. See Schieber v. City of Philadelphia, 320 F.3d 409, 418-19 (3d Cir. 2003). Although most of the litigation in this area has addressed issues bearing on inmate safety, see, e.g., Paulino v. Burlington County Jail, 438 F. App'x 106, 108-09 (3d Cir. 2011) (unpublished), the Third Circuit has suggested (in dicta) that a state actor's deliberate indifference to an inmate's unlawful incarceration may also give rise to a viable substantive due process claim. Berg, 219 F.3d at 274.

In Berg, the plaintiff was wrongfully incarcerated due to an inadvertent clerical error by a warrant clerk. The warrant clerk, who was asked by her supervisor to issue an arrest warrant for a man named Paul Banks, inadvertently transposed two numbers in Banks's criminal complaint number, resulting in an arrest warrant being issued for the plaintiff. Berg, 219 F.3d at 266-67. Later, when the supervisor reviewed Banks's file, he noticed there was no warrant for Banks despite an indication that one had been issued. Id. at 267. Although the supervisor admitted to considering "the possibility that an erroneous warrant was issued," he did not take any action to determine if such an error occurred. Id. The plaintiff, who brought suit for violations of his Fourth Amendment rights, alleged that both the supervisor and warrant clerk could also be held liable "under a due process theory of deliberate indifference." Id. at 274. Because the court concluded that neither the warrant clerk nor supervisor acted with deliberate indifference,[4] it did

---

[4] As the court explained, the warrant clerk had been, at most, negligent, and the supervisor had no reasonably available measures by which he could have discovered the mistaken warrant. Id. at 274-75.

7

not need to decide the viability of the deliberate indifference theory. Id. at 274-75. Even if the Berg court adopted the theory, however, it is unclear whether it would be availing to Nelling.

Berg's applicability to the present circumstances is limited by an important factual distinction. The Berg court dealt with defendants who were directly responsible for the plaintiff's unlawful incarceration (i.e., the warrant clerk issued the faulty warrant, and the supervising officer was a but-for cause of her doing so). By contrast, Nelling does not allege that Theodore caused her incarceration. This difference may be significant because the Berg court described the theory as applying to situations "[w]here a defendant does not intentionally cause the plaintiff to be seized, but is nonetheless *responsible for the seizure*." Id. at 274 (emphasis added). The Court is not convinced, therefore, that the Berg dicta can be read so broadly as to encompass state actors, such as former parole officers, who were not "responsible for the seizure."

Even if Berg can be read this broadly, however, Nelling would still need to demonstrate that Theodore acted with deliberate indifference. In the analogous context of Eighth Amendment claims, the Third Circuit has provided guidance on when prison officials act with deliberate indifference to an inmate's "incarceration without penological justification." Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010) (discussing Sample v. Diecks, 885 F.2d 1099, 1110-11 (3d Cir. 1989)). According to the Third Circuit, "not every official who is aware of [an unlawful incarceration] exhibits indifference by failing to resolve it." Sample, 885 F.2d at 1110. Whether an official acts with deliberate indifference will depend on "the scope of the official's duties and the role he or she has played in the everyday life of the prison." Id. Specifically, where the official is the only person invested with authority to release the inmate, a finding of deliberate indifference is far more justified than where the official is just one of many officials

8

who have the authority, or has no such authority at all. See id. The Third Circuit has explained, for example, that a warden who has authority to release an inmate "does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter." Id. By contrast, when a prison official "knows that, given his or her job description . . . a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present." Id.

Nelling has failed to allege that Theodore—as a parole officer—had the authority to release her from custody. See Roa v. City of Bethlehem, Pa., 782 F. Supp. 1008, 1012 (E.D. Pa. 1991) ("Even if [the defendant administrative assistant] had positive proof that the plaintiff's claim was accurate, he had no authority to release him from custody. At most, he could have contacted court officials to alert them to the error."). Nelling has also failed to allege that no other measures for securing her release were available, under Delaware County procedures and/or Pennsylvania law.

### 2. State-Created Danger

The state-created danger theory is of doubtful help to Nelling because her injury was not the result of Theodore's affirmative act(s). This conclusion is apparent when comparing the circumstances in this case with those at issue in Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006). In Bright, a probationer, Charles Koschalk, was sentenced to probation after pleading guilty to corrupting the morals of one of plaintiff's daughters (a twelve-year-old child). Id. at 278. Koschalk, who was prohibited under his probation from having any contact with the daughter, was observed meeting her at a mall by a probation officer. Id. Although the probation officer initiated a proceeding to revoke Koschalk's probation soon thereafter, no immediate

9

action was taken to detain him. Id. at 278-79. Several months later, but prior to the revocation hearing, Koschalk killed plaintiff's eight-year-old daughter as a form of retaliation.

In affirming the district court's dismissal of plaintiff's state-created danger claim, the Bright court concluded that "the state cannot 'create danger' giving rise to substantive due process liability by failing to more expeditiously seek someone's detention." Id. at 283-84. "[N]o affirmative duty to protect arises," the Third Circuit noted, even where the state actor has "knowledge of the individual's predicament." Id. at 284 (quoting DeShaney, 489 U.S. at 200). As in DeShaney, the Bright court noted that the "most that can be said of the functionaries in this case is that they stood by and did nothing when . . . circumstances dictated a more active role for them." Id. (quoting DeShaney, 489 U.S. at 2003); see also Sanford 456 F.3d at 312 ("'[M]ere failure to protect an individual . . . does not violate the Due Process Clause.'" (quoting DeShaney, 489 U.S. at 197)); Searles v. S.E. Pa. Transport. Auth., 990 F.2d 789, 793 (3d Cir. 1993) ("Liability under the state-created danger theory is predicated upon the states' affirmative acts . . . ." (quoting D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992)).

To the extent, therefore, that Nelling is making a state-created danger claim, it provides a doubtful basis for relief because Nelling does not allege that Theodore took any affirmative acts to cause her incarceration. Nelling alleges instead that Theodore *failed to act* (i.e., by "fail[ing] to promptly notify" prison officials, "fail[ing] to promptly arrange for plaintiff's release," "allowing plaintiff to remain incarcerated," "ignoring the notification" from prison officials, and "otherwise failing to exercise reasonable care"). 3d Am. Compl. ¶ 28. As the Bright court made abundantly clear, this is not a sufficient basis to assert a state-created danger claim. See 443 F.3d at 284.

**B.     Limited Discovery Is Justified**

As the discussion in this memorandum shows, Nelling will face substantial hurdles in proving that her claim fits within either the custodial relationship or state-created danger doctrines, at least with respect to her claims against the single defendant remaining in this case. In civil rights cases, however, a federal judge should give plaintiffs a full opportunity to seek application of settled civil rights principles to unique factual situations. Here, because Nelling was imprisoned under unusual and possibly unlawful circumstances, the Court will give her a chance to demonstrate the existence of deliberate indifference or an affirmative duty. Since the underlying facts are not in significant dispute, discovery should be limited in time and focused on the following issues which have not been thoroughly briefed:

> 1. The duties and responsibilities of parole officers, such as Defendant, under Pennsylvania law and/or Delaware County policies or procedures;
> 2. The significance of a bench warrant having been withdrawn in fact, but erroneously maintained as open on the NCIC database;
> 3. Any other options available to the Plaintiff under Pennsylvania law and/or Delaware County procedures, to secure her release from prison under the circumstances in this case;
> 4. Issues bearing on qualified immunity.

**C.     Qualified Immunity**

As to qualified immunity, there are no facts alleged by Plaintiff, and no law presented by Defendant, as to the duties of state parole officers concerning their obligation, if any, to a person in Plaintiff's situation. Nelling argues that qualified immunity is not justified because Theodore should have known that allowing her to remain unlawfully incarcerated violated the "clearly established constitutional right to be free from deprivations of her liberty." Even if Plaintiff establishes a violation of a constitutional right, however, Defendant may still be entitled to qualified immunity if the right was not "clearly established." See Saucier v. Katz, 533 U.S. 194 (2001). The Court will revisit this issue following discovery.

## C. False Imprisonment Claim

In Pennsylvania, a false imprisonment claim requires proof that "(1) the defendant acted with the intent to confine the plaintiff within fixed boundaries; (2) the defendant's act directly or indirectly confined the plaintiff; and (3) plaintiff was aware of the confinement or harmed by it." Pope v. Rostraver Shop 'N Save, 389 F. Appx. 151, 152 (3d Cir. 2010) (unpublished). In her Third Amended Complaint, Nelling alleges that Theodore (1) "knew" Nelling was unlawfully incarcerated, (2) was the "only" law enforcement officer in Pennsylvania who had this knowledge, (3) had a "duty" to promptly secure Nelling's release, and (4) acted with "wilful (sic) misconduct and reckless indifference" in letting Nelling remain incarcerated. The allegation of acting willfully encompasses intent.[5] In liberally construing these arguably conclusory allegations, the Court will allow Nelling to proceed with the claim.

## VI. CONCLUSION

For the foregoing reasons, the Court will DENY Defendant's Motion to Dismiss and order limited discovery.

An appropriate order follows.

O:\CIVIL 11\11-6973 Nelling v. County of Delaware\11cv6973.011113.memo.docx

---

[5] See Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) ("Willful misconduct, for the purposes of tort law, has been defined by our Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. In other words, the term 'willful misconduct' is synonymous with the term 'intentional tort.'" (citations omitted)).

12